## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BOBBY J. TRACY,                                    Case No. 1:12-cv-588

       Plaintiff,                              Dlott, J.
                                                   Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Bobby J. Tracy filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents numerous claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff applied for Disability Insurance Benefits ("DIB") in June 2008, alleging disability primarily due to neck pain, arm pain and weakness, and vision problems (Tr. 20), with an onset date of April 1, 2007. After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing was held on December 9, 2010, at which Plaintiff was represented by counsel. At the hearing, ALJ Gregory G. Kenyon heard

testimony from Plaintiff and from a vocational expert.  On January 28, 2011, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled.

The record reflects that Plaintiff was 51 years old at the time of the ALJ's decision.  She remarried in October of 2009 and resides with her husband.  She has a high school education, and worked from 1999 to 2007 for The Fechheimer Brothers Company in a variety of positions.  She also worked from 1996 through November 2006 for a printing company.  Based upon her testimony of her varied positions over time, the vocational expert identified past relevant work experiences as a warehouse assistant supervisor, grocery store cashier, receptionist, and cook.  (Tr. 60-61).

Plaintiff sustained a serious work injury at the Fechheimer Brothers Company in April 2001, for which she received (and states that she continues to receive) Workers' Compensation benefits.  Plaintiff stopped working in April 2007 due to persistent severe neck and shoulder pain; the ALJ determined that Plaintiff has not performed substantial gainful activity since that time.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "cervical degenerative disc disease, degenerative joint disease of the right shoulder, carpal tunnel syndrome, glaucoma, and diabetes mellitus." (Tr. 18).  The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 19).  Rather, the ALJ determined that

Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work, described as follows:

> [S]he can occasionally crouch, stoop, kneel, and climb ramps and stairs, and she can never crawl or climb ladders, ropes, or scaffolds. She can occasionally engage in overhead reaching with the dominant upper extremity. She cannot work around hazards such as unprotected heights or dangerous machinery and she cannot drive automotive equipment. She can frequently use her hands for handling and fingering. Mentally, the claimant is limited to unskilled simple, repetitive tasks.

(Tr. 20).

Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while precluded from most past work, Plaintiff would be able to return to her past relevant work as a cashier. (Tr. 23, 62-63). Relying on the VE's testimony, the ALJ alternatively determined that other jobs existed in significant numbers in the national economy that Plaintiff could perform, including cleaner, hand packer, and inspector, as well as assembler. (Tr. 23-24, 62-64). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. (Tr. 24).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff presents numerous claims, articulated somewhat differently in the captions of Plaintiff's brief than in the body of that document.[1] As understood by the undersigned, Plaintiff

---

[1]Paraphrasing the captions used by Plaintiff in the "Argument" section of the brief, the errors are described as: (1) a lack of substantial evidence to support denial of benefits; (2) a failure to find other related medical conditions were "severe"; (3) overreliance on Exhibit 4F (Dr. Sheridan's report) and failure to consider Exhibits 6F (chiropractor Robert Prewitt), 9F (BWC decision), 11F (Dr. Doriott), and 16F

asserts that the ALJ erred: (1) by disregarding a prior determination that Plaintiff could not perform her past work; (2) by failing to find additional medical conditions to be "severe"; (3) by overly relying upon the consultative examination performed by Dr. Sheridan and disregarding treating physician opinions; (4) by improperly evaluating Plaintiff's credibility, including her allegations of disabling pain; (5) by failing to include additional limitations in the hypothetical posed to the VE; and (6) by failing to evaluate Plaintiff's age.  None of the asserted errors require remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for DIB benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

---

(chiropractor Michael Hekler); (4) an improper assessment of credibility; (5) an improper evaluation of pain; and (6) a failure to include additional restrictions in the hypothetical posed to the VE.

quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion .  . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

5

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

**1.  Failure to Accept "Ruling(s)" That Plaintiff Could Not Perform Past Work**

Plaintiff argues that the ALJ erred by failing to acknowledge a prior administrative "finding" that Plaintiff's limitations were severe enough that she could not perform her past jobs.  She contends that the Social Security Administration previously concluded that Plaintiff could not perform her past work.   Plaintiff also relies upon a prior determination by the Ohio BWC that approved temporary disability for multiple injuries. (Tr. 401-402).

Neither argument has merit.  Plaintiff's citations to "findings" by the Social Security Administration refer to a single sentence drawn from her initial denial letter, [2] in which the agency states: "We realize that your condition prevents you from doing your past jobs, if any, but it does not prevent you from doing other work which is less physically demanding."  (Tr. 74). In context, it is not entirely clear that the referenced form language constitutes the type of forceful "ruling" that Plaintiff suggests. Regardless, that initial determination was not binding on the ALJ, who must consider

---

[2] Although Plaintiff cites a second page (Tr. 78), that citation, to the denial of reconsideration letter, does not contain any language to support Plaintiff's argument.

additional evidence at the evidentiary hearing. For the same reasons, Plaintiff's reliance on the award of temporary disability benefits by the Ohio Bureau of Workers' Compensation is misplaced. That decision also was not binding on the ALJ. The VE's testimony at the hearing that Plaintiff's prior job of cashier was consistent with Plaintiff's RFC provides substantial evidence to support the ALJ's determination that Plaintiff could perform that work. Substantial evidence in the form of the VE's testimony also supports the determination that there were thousands of jobs in the regional economy in addition to the job of cashier that Plaintiff could still perform. (Tr. 61-64). *See also generally, Varley v. Secretary of Health and Human Servs.,* 820 F.2d 777, 779-80 (6th Cir. 1987).

### 2. Failure to Find Additional Impairments to be "Severe"

Plaintiff additionally complains that the ALJ "found only a limited number of Plaintiff's overall thirty six (36) medical conditions to be 'severe.'" (Doc. 5 at 14). Specifically, Plaintiff attacks the ALJ's failure to specifically discuss "the significance of" Plaintiff's cervical radiculopathy/radiculitis, her shoulder impingement syndrome, her herniated cervical disc, her neuropathy, her C6-7 displaced annular tear, her cervical spondylosis, "and some twenty-five (25) other [unspecified] diagnosed conditions." (Doc. 5 at 16).

Plaintiff's argument confuses diagnoses with disability. The number of formal diagnoses scattered among a claimant's medical records has never sufficed as proof of disability. A diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Higgs*

*v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)("The mere diagnosis..of course, says nothing about the severity of the condition."). There is no evidence to suggest that the ALJ failed to consider all relevant medical evidence submitted to him.

Importantly, Plaintiff fails to explain how the ALJ's alleged failure to discuss any particular diagnosis is grounds for reversal in this case.  As even Plaintiff concedes, so long as an ALJ determines that some severe impairments exist at Step 2 of the sequential analysis and proceeds to Step 3, "any failure to identify other impairments, or combinations of impairments, as severe in step two would only be harmless error." (Doc. 5 at 15); *see also Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

### 3.  Alleged Improper Evaluation of Medical Evidence

In another assertion of error, Plaintiff argues that in formulating Plaintiff's RFC, the ALJ relied far too heavily upon the opinions of a consulting physician, and too little on the opinions of her treating physicians.

#### a.  Legal Standards

The relevant regulation concerning the opinions of treating physicians, 20 C.F.R. §404.1527(d)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  *Id.*; *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).

The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> . . . these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting 20 C.F.R. § 404.1527(d)(2)).    Thus, the treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."   *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight.  Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996).   In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion. These factors include, but are not limited to: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(d)(2).   "[A] finding that a treating source medical opinion...is inconsistent with the other substantial evidence in the case record means only that the

opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."
*Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p).

### b.  Examining Consultant Dr. Sheridan

In formulating Plaintiff's RFC, the ALJ relied most heavily on the opinion of examining consultant Dr. Sheridan, giving his opinion "significant weight."  Plaintiff objects to the use of Dr. Sheridan's examination report on the grounds that the exam was conducted two years prior to the date of the hearing, without review of relevant medical records. For the same reasons, Plaintiff objected to Dr. Sheridan's report being admitted into evidence at the evidentiary hearing or considered at all.  The ALJ properly overruled that objection as more properly considered in the context of the weight to be given to the report, and not to its admissibility.  The ALJ's ruling in this respect was not error.

Whether the ALJ adequately considered the medical evidence (both prior to and after Dr. Sheridan's September 22, 2008 report) requires some additional discussion. Plaintiff asserts that Dr. Sheridan failed to consider a June 30, 2007 MRI of Plaintiff's spine, or the records of treating physicians such as Drs. Atluri, Goldfarb, and Simons. Plaintiff further complains that Dr. Sheridan did not perform or review any objective studies or tests.  The latter contention is refuted by Dr. Sheridan's report, which reflects a complete consultative exam, including the performance of manual motor testing, range of motion tests, and numerous additional "objective" measurements and tests. (*See* Tr. 268-278).  With few exceptions, Dr. Sheridan's exhaustive examination revealed only "normal" objective findings.

While it is less clear that Dr. Sheridan reviewed Plaintiff's medical records, including the June 2007 MRI that predated his report, there is no question those records were reviewed by other consulting physicians and the ALJ.  Consulting physician William Bolz, M.D. completed a full records review and assessed Plaintiff's RFC on October 8, 2008.  (Tr. 279-86).  His assessment was generally consistent with the RFC found by the ALJ.  On July 20, 2009, a second consulting physician, Gerald Klyop, M.D., reviewed updated medical records and affirmed the RFC for light work that had been assessed by Dr. Bolz.  (Tr. 386).  Plaintiff points to no relevant records that were not reviewed by these consultants.  Although the ALJ stated that he was giving Dr. Bolz's opinion only "some" weight to the extent that the ALJ believed that an additional handling restriction was warranted, the ALJ noted that the assessment of Dr. Bolz (and by inference, Dr. Klyop) was "generally consistent with the medical record as a whole." (Tr. 22).  The ALJ also specifically discussed the results of the Plaintiff's MRI and EMG studies in the context of formulating Plaintiff's RFC.  (Tr. 18-19).

### b.  General Review of Clinical Records of Treating Sources

Plaintiff complains that the ALJ failed to discuss the records of Drs. Prewitt, Goldfarb, Simons and Atluri.  She additionally complains that the ALJ failed to discuss records from Drs. Lee-Robinson and Thieman, or of the Goshen Family Practice. However, Plaintiff also acknowledges that the ALJ "previously cited to all of those records (except those of Dr. Simons) and relied upon them in finding at step two (2) that plaintiff suffered from a number of 'severe' conditions."  (Doc. 5 at 22-23).

As discussed above, an ALJ must give "controlling weight" to the opinions of treating physicians, so long as those opinions are "well-supported" and not inconsistent with other evidence.   However, Plaintiff's assertion that the ALJ erred in failing to give controlling weight to any of her treating physicians is not persuasive because, with rare exceptions, Plaintiff fails to identify any specific "opinions" that the ALJ rejected.

For example, Plaintiff asserts that the ALJ erred by affording the opinion of her chiropractor, Robert Pruitt, "less weight," but fails to identify the manner in which the ALJ allegedly erred. (Doc. 5 at 23).   Only a physician or a psychologist can be considered to be a "treating physician" whose opinion would be entitled to controlling weight.  Plaintiff's argument as to her chiropractor is so cursory as to be unreviewable.[3] Nevertheless, many of the chiropractor's records actually support the Commissioner's determination that Plaintiff is not disabled.  (*See, e.g.*, Tr. 290, Dr. Prewitt's notation of "continued mild improvement," with therapy recommended "at a reduced frequency as she continues to make improvement").

Plaintiff next complains that the ALJ failed to adequately consider the records of Steven Goldfarb, M.D., an orthopedist with whom she treated for four months beginning on April 24, 2007.  Dr. Goldfarb rendered no opinions concerning Plaintiff's functional limitations, and his treatment records preceded the date of Dr. Sheridan's examination and Dr. Bolz's records review.   Dr. Goldfarb's clinical records also appear to be consistent with the findings of Dr. Sheridan and/or of the ALJ.  (*See* Tr. 249, noting

---

[3]No obvious error is evident from the ALJ's analysis of Dr. Prewitt's opinion, which cites to the relevant records and explains that his opinion is not supported by medical evidence of record, and that as a chiropractor, Dr. Prewitt is not considered an acceptable medical source.

Plaintiff "is neurologically intact on both upper extremities" with "full range of motion of her cervical spine without any radicular symptoms" ).  Therefore, no error is apparent.

The third treating physician upon whose records Plaintiff relies is a pain specialist, Mitchell Simons, M.D. of Greater Cincinnati Pain Management Centers. According to Plaintiff, she treated with Dr. Simons for approximately 10 months, beginning in April 2007. (*See generally*, Tr. 251-267).  Again, however, Plaintiff fails to point to any specific opinions rendered by Dr. Simons that the ALJ rejected.  Plaintiff's treatment with Dr. Simons also preceded the consulting physicians' records review. The ALJ need not cite to every single medical record, when it is clear that all relevant records have been considered.  In addition, the most recent records from Dr. Simons confirm her continuing improvement.  (*See* Tr. 252, noting "shoulder is feeling a lot better," that "[s]he is definitely moving forward," and that "[w]e want to keep the progress going").  Therefore, no error is apparent.

Last, Plaintiff treated with Samuel Atluri, M.D., beginning June 30, 2008 for a period of approximately fourteen months.  Dr. Atluri noted Plaintiff's complaints of pain ranging from 4 to 6 out of 10 on the pain scale from neck pain with cervical disc displacement and neck pain with sprain.  On examination in March 2009, he noted decreased muscle strength in Plaintiff's upper right arm, and on April 2009, he noted additional complaints of tingling, numbness, and weakness in her hands.  On July 14, 2009, he indicated her pain was worse after activity, and referred Plaintiff for an additional MRI and consultation with Dr. Kramer.[4]  Consistent with other practitioners,

---

[4]Dr. Atluri's clinical notes merely reflects "some changes noted" concerning the July 2009 MRI.  What those changes might have been is not evident from the administrative record. (Tr. 388).

his most recent note, from August 2009, reports that Plaintiff's arm weakness has improved, that her medications are helping her pain and helping her to be more "functional," and that she is in no apparent distress and not in severe pain.  The same record finds normal motor strength in all extremities, and that Plaintiff has a normal gait. (Tr. 388).  Dr. Atluri also offers no specific opinions concerning Plaintiff's functional limitations.  Therefore, the undersigned finds no error.

Plaintiff's arguments concerning the clinical records of other treating sources are even more general and less persuasive.  While not entirely clear, it appears that Plaintiff may be alleging that Dr. Lee-Robinson (who conducted an EMG study) opined that Plaintiff was "disabled."  (Tr. 542).    However, Dr. Lee-Robinson's very cursory reference is contained in a cover letter to the referring physician, thanking him for the referral of "a very pleasant disabled lady who tolerated today's testing without any difficulties."  (*Id.*). An opinion on the ultimate issue of disability is not entitled to controlling weight since that issue is reserved to the Commissioner.  See 20 C.F.R. §404.1527(e).  Notably, Dr. Lee-Robinson's report reflects that Plaintiff's carpal tunnel syndrome showed only "minimal progression" since the prior EMG testing in May of 2007.  (Tr. 543).

### c.  The Opinions of Drs. Doriott and Hekler

In addition to general reliance upon the clinical records of various treating physicians and chiropractors, as to which the undersigned finds no cause for remand, Plaintiff argues that the ALJ erred by failing to adopt the RFC opinions offered by a treating physician, Dr. Doriott, and a second treating chiropractor, Dr. Hekler.  As

previously discussed, the RFC opinions more heavily relied upon by the ALJ were offered by state agency physicians rather than treating sources.   Reviewing the ALJ's analysis, however, the undersigned finds no reversible error.

On September 2, 2010, Dr. Elizabeth Doriott submitted a Basic Medical Form to the Department of Jobs and Family Services.  In addition to stating Plaintiff's diagnoses, Dr. Doriott opined that Plaintiff was capable of lifting ten pounds frequently and twenty pounds occasionally, that she was restricted in her ability to stand/walk to one to two hours out of eight, that she could stand/walk without interruption for the same amount of time, and that her "seeing" was "markedly limited."  (Tr. 459).  Dr. Doriott also opined that Plaintiff was "going blind" and that she suffers from uncontrollable hypertension. (Tr. 461).   Dr. Doriott offered no other limitations such as restrictions on sitting, reaching, fingering, or handling.

The ALJ afforded Dr. Doriott's opinions "less weight" because, contrary to Dr. Doriott's opinion that Plaintiff would not require any handling/fingering limitations, the ALJ determined that evidence pertaining to Plaintiff's carpal tunnel syndrome supported at least a modest limitation.  As pointed out by the Defendant, the ALJ did adopt Dr. Doriott's exertional restrictions insofar as he limited her to "light" work, in contrast to Dr. Sheridan's opinion that she could lift up to fifty pounds.  (*Compare* Tr. 277).

On the other hand, the ALJ failed to discuss (or adopt) either the standing/walking limitations or the visual limitations offered by Dr. Doriott.  An ALJ who fails to give "controlling weight" to the opinions of a treating physician must provide "good reasons" for that decision.  The Commissioner's failure to follow its procedural

15

rules, such as by providing "good reasons" for the rejection of a treating physician's opinion, often will require remand. *See Wilson v. Com'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). Remand is not required in the instant case, however, because the error was clearly harmless or de minimis. "[H]armless error may include the instance where a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley*, 581 F.3d at 409.

Dr. Doriott's opinions that Plaintiff is unable to stand/walk for more than two hours in a day does not appear to be "well supported," and therefore is not entitled to controlling weight on that basis alone. Dr. Doriott briefly alludes to "neuropathy" but Plaintiff's neurological examination findings were normal. (Tr. 268, 273-75). Plaintiff herself fails to point to any medical basis for Dr. Doriott's standing/walking restriction, which appears to be in conflict with the record as a whole. As best the undersigned can ascertain, none of Plaintiff's medical records would support such significant restrictions in her abilities to stand, walk or sit. Virtually every examination record documents Plaintiff's "normal gait" and normal lower extremity findings, with the basis for Plaintiff's functional limitations focused on Plaintiff's neck and shoulder issues and carpal tunnel syndrome. (*See, e.g.* Tr. 273, finding that Plaintiff had no standing or walking restrictions and used no ambulatory aids).

Dr. Doriott's opinions that Plaintiff's vision is "markedly limited" and that she is "going blind" appear to be equally unsupported. Dr. Doriott is not an eye specialist. From 1999 through 2010, Plaintiff has treated with Lisa Thieman, O.D./Wing Eye Care. In October 2010, Dr. Thiemann noted that Plaintiff had no diabetic retinopathy (Tr. 496)

16

and normal corrected visual acuity of 20/20 in both eyes. (Tr. 496, 501). Although Dr. Thiemann also noted Plaintiff's longstanding glaucoma (since 1999), she stated that Plaintiff was not compliant with her medication regimen for that condition. (Tr. 501-502). Despite the ALJ's failure to specifically discuss Dr. Doriott's opinion concerning Plaintiff's vision, he did discuss Dr. Thiemann's records and (normal) findings. (Tr. 19). Given Dr. Thiemann's clinical records, the undersigned finds no error in the ALJ's failure to adopt Dr. Doriott's opinion that Plaintiff's vision was "markedly" limited.

The only other opinion concerning Plaintiff's functional limitations was offered by Michael Hekler, another treating chiropractor. Dr. Hekler also completed a Basic Medical Form for the Ohio Department of Jobs and Family Services. On that form, dated August 10, 2010, Dr. Hekler also opined that Plaintiff's conditions affected her ability to stand/walk for sustained periods, and limited her to a maximum of 3 hours of standing/walking, with not more than one to two hours without interruption. Dr. Hekler additionally opined that Plaintiff could sit for no more than three hours in a work day, for not more than one hour without interruption, and that her abilities to reach, handle, and engage in repetitive foot movements were all "markedly" limited. He opined that Plaintiff's abilities to push/pull, bend and see all were "moderately" limited. (Tr. 545-547). Plaintiff argues that the ALJ erred by rejecting Dr. Hekler's conclusions, particularly concerning her abilities to push/pull or reach, given that the ALJ found that she could engage in "frequent" reaching. However, as a chiropractor, Dr. Hekler is not an acceptable medical source whose opinions are entitled to controlling weight. The ALJ also explained that the restrictions offered by the chiropractor were not supported

17

by objective medical evidence, and included such extreme restrictions that Plaintiff would be rendered bedridden, which the record as a whole did not support.  (Tr. 22).

In sum, the ALJ adequately explained that the basis for his rejection of Dr. Doriott's opinion that Plaintiff had no reaching, handling or fingering restrictions at all, and his reasons for imposing those limitations in formulating Plaintiff's RFC.  The ALJ's failure to adopt the most extreme limitations offered by any treating source, Dr. Hekler, does not provide grounds for remand because those limitations were not well supported, were not offered by an acceptable medical source, and were inconsistent with the record as a whole.  Similarly, while the ALJ erred in failing to discuss the portions of Dr. Doriott's opinion relating to standing/walking and vision limitations, that error was harmless because that portion of Dr. Doriott's opinion was patently deficient.

### 4. Evaluation of Plaintiff's Credibility

Next, Plaintiff criticizes the ALJ for finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but then also simultaneously concluding that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms" were not credible.  (Tr. 21).  Plaintiff argues that the ALJ should not have found Plaintiff's complaints to be "inconsistent" with the RFC determined by the ALJ without citing any specific exhibit.  (Doc. 5 at 26-27).  Plaintiff argues that many of her complaints were supported by medical testing that corroborated the existence of severe medical impairments.

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great

weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 392.

Plaintiff points to testimony at the hearing that she self-limits her driving to short distances due to vision issues, including "really bad blind spots in certain positions," as well as arm weakness and difficulty in turning her neck. (Tr. 35). Plaintiff goes on to cite additional testimony concerning her various diagnoses and pain complaints. She specifically refers to testimony concerning her macular degeneration (involving blind spots), and that her eyes are also impacted by her diabetes "when my sugar[']s up." (Tr. 43-44). However, Plaintiff's testimony was contradicted by the records of her treating eye doctor, who noted Pliantiff's 20/20 visual acuity and lack of diabetic retinopathy.

Plaintiff additionally points to testimony that she can stand only for an hour at a time, can walk only about 90 minutes, and can sit for not more than an hour. (Tr. 44-45). She also testified that she spends most of the day lying on the couch. Plaintiff argues that all of this testimony was consistent with her medical records and the ALJ's determination that she has "severe" impairments. She contends that the ALJ should not have compared her testimony to the opinions of Dr. Sheridan.

The testimony to which Plaintiff refers was both acknowledged and discussed by the ALJ, even though he ultimately found her statements not to be fully credible.  (Tr. 20-21).  Plaintiff suggests that "for the ALJ to assess the Plaintiff's credibility against the ALJ's [RFC] finding" would be akin to the ALJ substituting his own medical judgment for that of the treating physician (Doc. 5 at 27).  But for an ALJ to determine a plaintiff's RFC finding is not "play[ing] doctor" as Plaintiff alleges.  Rather, the regulatory framework *requires* an ALJ to determine a claimant's RFC based upon all of the medical evidence in the record.  Nor was it error for the ALJ to confirm that Plaintiff's medically determinable impairments could cause some symptoms, but nevertheless to find that her statements concerning the severity of those symptoms and intensity were not credible.  In fact, similar language is commonly used, almost to the point of boilerplate, in social security opinions rendered by many administrative law judges. As previously discussed, there was little (if any) objective medical evidence to support Plaintiff's allegations that she was severely limited in her abilities to stand, walk, or sit.

Inextricably tied to Plaintiff's overall complaints about the ALJ's assessment of her credibility is her criticism of his assessment of her pain level.  She argues that her pain alone should have been found to be disabling, based upon her testimony and medical records demonstrating that her impairments could be expected to produce some pain.  As other Sixth Circuit cases have stated, however, "[s]ubjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)(quoting 42 U.S.C. §423(d)(5)(A)).

Based upon a review of the record as a whole, the Court finds no error.  Many people experience chronic pain that is less than disabling.  *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling).  Because substantial evidence supports the functional limitations found by the ALJ, his failure to include any additional limitations based upon complaints of disabling pain does not constitute reversible error.

### 5.  Alleged Error Regarding the Hypothetical Provided to the VE

Plaintiff contends that the ALJ failed to pose appropriate hypothetical questions to the VE, because he failed to conclude visual restrictions, postural limitations, or more severe handling/fingering limitations.  The visual restrictions were supported only by Dr. Doriott's "markedly limited" vision opinion, and Plaintiff's testimony that she limits her driving due to some vision issues.  Such a limitation was contradicted by the records of Plaintiff's eye doctor.  In addition, although the VE testified that the jobs could not be performed by a blind person, she explained that she could not state whether some impairment (such as halos or "blind spots") would preclude the referenced jobs, absent additional detail concerning the precise level of impairment.  (Tr. 68-69).  For the reasons previously stated, substantial evidence supports the ALJ's decision not to include a visual limitation in Plaintiff's RFC.

Similarly, substantial evidence supports the ALJ's decision not to impose additional limitations relating to Plaintiff's carpal tunnel syndrome, or additional postural limitations suggested by Drs. Hekler and/or Doriott.  Although Plaintiff focuses on the

fact that the VE testified that Plaintiff would be disabled if restricted to both "occasional" handling and fingering, the VE also testified that if Plaintiff were able to perform "frequent" handling but only "occasional" fingering, she would still be employable.  (Tr. 66-67). For reasons previously discussed, the record provides substantial evidence for the ALJ's determination that Plaintiff could perform "frequent" handling and fingering. With respect to the requested postural limitations, the VE testified that if Plaintiff had only standing/walking limitations (per Dr. Doriott), she could still perform a significant number of sedentary jobs, but that if she were further restricted to sitting, meaning that she could not sit/stand/walk for a total of 8 hours, then all jobs would be eliminated.  (Tr. 69). Again, the medical record supports the ALJ's decision not to include any additional limitations on standing, walking or sitting.  *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994)("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.").

### 6.  Alleged Error Regarding Plaintiff's Age

Last, Plaintiff briefly argues that the ALJ "failed to consider the affect [sic] of plaintiff's age at the time of the hearing and its impact upon her ability to adjust to work." This argument is flatly refuted by the ALJ's written opinion, wherein he specifically discussed Plaintiff's age, including the fact that during the time that her application for benefits was pending, she "changed age category to closely approaching advanced age." (Tr. 23).

**III.  Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole, and that this case be **CLOSED.**


 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BOBBY J. TRACY,                                        Case No. 1:12-cv-588

        Plaintiff,                                  Dlott, J.
                                                       Bowman, M.J.

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).